This is case number 410-0362, Community Living Options v. Illinois Department of Public Health. For the appellant, we have Jason Lundy and Daniel Maher. And for the appellee, Jan Hughes. Are you both going to be arguing? And you've split your time, covered everything. Okay, you may proceed. Thank you. Good morning. May it please the court, counsel. I'm Jason Lundy, one of the attorneys for the appellant, Community Living Options, doing business as Belafonte in place. My co-counsel is Daniel Maher. With the court's permission, Mr. Maher and I will split the argument. I will address the propriety of the Illinois Department of Public Health, redetermining its allegations against Belafonte, and Mr. Maher will address the Nursing Home Care Act's limits on flat-fine fees. I will briefly begin with a little bit of background that gets us here today. Belafonte is a 16-bed home for developing and disabled adults. It is regulated by the Illinois Department of Public Health under the Nursing Home Care Act. Part of that regulation is subject to surveys at various times for various reasons. IDPH conducted a survey in October 31, 2007, and thereafter issued a notice of alleged violations against Belafonte on December 6, 2007. That notice cited Belafonte with one Type A-level violation of the Nursing Home Care Act and its regulations and imposed a $20,000 fine. The case was set for an administrative hearing in March 2009. Shortly before that, the Circuit Court of Sangamon County issued an injunction against the Department of Public Health in joining the department from imposing flat fines greater than $10,000. A few days before the administrative hearing was to commence, the department filed a motion to amend its December 2006 notice. IDPH sought to amend that notice, change the allegations from the survey from one Type A violation to three distinct Type A violations, and apportion fines for each of those three Type A violations, $5,000, $5,000, $10,000. After the administrative hearing, the department sustained the violations and imposed the fine, and we have appealed to the Circuit Court and now here. Our appeal really challenges two aspects. First, the propriety for IDPH to, on the eve of trial, split its notice that alleged one violation into three violations in order to circumvent the injunction against a flat fine greater than $10,000, and also whether fines are permitted by the Nursing Home Care Act to be greater than $10,000 in any instance. What happened to the ruling that the department was responding to? Was it Sangamon County Circuit Court? Yes, Your Honor. That was appealed as well, and the Court of Appeals vacated the Rosewood ruling for a jurisdictional defect. In that case, the department failed to meet a mandatory time frame to issue its decision on the entire administrative hearing. Because IDPH failed to issue its ruling on the merits of the case within 120 days, the Court of Appeals ruled that IDPH lost jurisdiction over the entire survey and matter, and therefore vacated not only the Circuit Court's Rosewood injunction, but also the underlying allegations and violations cited by IDPH. Is there any question about that IDPH was attempting to comply, in this case, with the Circuit Court's ruling? Judge, I don't think that's an accurate perspective on what IDPH was doing in this case. If IDPH wanted to comply with the Rosewood injunction before we went to the administrative hearing for Belafontaine, IDPH would have reduced its flat fine from $20,000 to $10,000. That would have been consistent with the Rosewood injunction that limited them from fines greater than $10,000. What IDPH did here was an end around the injunction to say, we'll take this one violation, we'll carve it into three, and that way we can apportion that $20,000 in smaller chunks and not run afoul of the institution. So it's your position that that wasn't in compliance with the injunction? Well, Your Honor, that was not in compliance with the injunction, and it's also not in compliance with the Nursing Home Care Act. Because for a variety of reasons, IDPH cannot, on the eve of an administrative hearing, go back and redetermine the violations alleged and imposed against a facility. What prohibits them from doing that? First, Judge, the structure of the Nursing Home Care Act provides that a violation has to be determined no later than 60 days after the conclusion of an IDPH survey or investigation. In this instance case, IDPH made its determination by issuing the notice in December 2007, less than 60 days after its survey. After that 60-day time frame has elapsed, then the determination is set. IDPH can't make a redetermination of a violation beyond the time that it is allowed to determine a violation. So that's your assessment that this was a redetermination, that this was something new? Absolutely, Judge. There's nothing new in these charges, is there? Isn't it just brought in a different fashion? Was there a surprise here of what they are alleging the violations were? No surprise in the substance of the allegations. And that's exactly why it was not an amendment, Judge. It was a redetermination. Well, I'm not sure I understand, Counsel. It seems to me that your claim about nothing more than 60 days would be as if IDPH said, oh, and by the way, there's this other violation, too. There's this one patient who was treated badly and was left to develop bed sores and wasn't cared for properly, whatever it might be. Had that happened on the cusp of the hearing, I could understand your argument that, hey, you had 60 days to bring charges and you didn't. This sounds to me like our situation here is simply a matter of changing and pleading in some technical sense, but the underlying actions are entirely the same. Isn't that correct? Well, Judge, it's correct that IDPH didn't change anything about the allegations alleged against Belafonte. Nor was there any surprise by Belafonte as to what you were defending? Well, Judge, there is a difference in defending against one type A violation from three type A violations. Factually, there was no... I mean, the facts that Belafonte was dealing with were exactly the same. I agree, Judge. Yes. Go ahead. Yes. Yet, the legal significance of IDPH's action changed greatly. It went from a single type A violation to three separate type A violations. One thing that I think shows the problematic nature of IDPH's doing this, they are arguing that it was just a correction to conform the legal action more to the allegations from the surveyor. Well, that's really kind of... I thought they made it clear that they were trying to comply with Rosewood's injunction. Didn't they say that? They said that, Judge. They said they were trying to comply. Well, they said it. And the reason I ask that is it appears that but for that injunction, IDPH would not have taken any action at all, would it? Do you have any reason to think so? I don't, Judge. I don't think... I think without the Rosewood injunction, IDPH would have proceeded on. And just so we're clear, the Rosewood injunction at this point, before this court, is a nullity. Isn't that correct? That's correct, Your Honor. However, the second aspect of our case really goes back to the issue of Rosewood and whether IDPH has the authority to impose a fine greater than $10,000 presently. One aspect that I think really reveals that IDPH wasn't doing this to comply with adopting to the injunction at leaving its allegations static and knocking down the alleged fine from $20,000 to $10,000. The only real change IDPH made was to split up a single A into three As in order to justify its level of fine that was faced with a court order saying, you can't impose that. Well, to their credit, it's not as if they were hiding anything. They made it clear that they thought they had to comply, but they thought it was wrong and that they were, as you put it, trying to circumvent this. Well, yeah, we think we're circumventing it and we think this is appropriate and that decision from the second court we think is wrong anyway, but we'll deal with it in this fashion. What's the matter with that? Well, Judge, I agree that IDPH was up front in that decision, but I think they don't have the ability to circumvent an injunction. But that's not before us anymore. So now the question is, is there some manner of pleading rules that stops them from doing this? In other words, if there was no Rosewood injunction, because it's Malinois, what is there that would have stopped IDPH either initially or at the end from just this matter of pleading changing its approach? I understand, Judge, and there's several provisions of the Nursing Home Care Act and the IDPH rules that prevent them from doing that in this manner. One is the time frame, that they're limited from making a redetermination. Well, that's assuming, you know, as I asked you before, it seems to me a redetermination or a determination of new charges is determination of new charges. There's this other patient there who was mistreated, blah, blah, blah. But there's no surprise here. This is a repackaging, so to speak, of the same charges. Well, Your Honor. So if we don't think, if this court doesn't agree with you that somehow that's a violation of the 60-day rule, what's the other problem? The issuance of the amended notice was not done under the authority of a director or a direct designee. It was done by an assistant counsel on the eve of the hearing. IDPH, or the Nursing Home Care Act, requires that any determination of a violation or issuance of a violation or a violation be done under the authority of the director or his direct designee. The initial one was, wasn't it? The initial one was. So as a matter of technical pleading requirements, your position is that any change in the pleading has to be done similarly. Judge, I wouldn't argue that a correction to an incorrect citation or a housekeeping correction to a pleading would need to be done under the authority of the director. But repackaging or redetermining a single violation into multiple violations is something that is actioned by the department that requires the authority of the director or a direct designee. Why? Because the Nursing Home Care Act says it. Why does that require it, but a change of statute or other technical stuff not? Well, because, for example, in this case, the department's notice improperly cited, used the phrase, Skilled Nursing and Intermediate Care Facilities Code, which is actually Part 300 of Title 77 of the Illinois Administrative Code. The amendment corrected that to reflect the Intermediate Care for the Developmentally Disabled Facilities Code, which is Part 350. Now, that is not a redetermination of the allegation or the legal imposition of violations or fines against the facility. So I would not argue that the correction of an error in citation would require a director's authority. Well, why shouldn't we view the statutory requirement about the director's authority being a determination of the factual vermins as opposed to the technical packaging of them? And the kind of compliance here, these are the bad things that they claim happened with regard to this particular woman and how the matter was treated. And the case that went to trial was just that. It was just packaged differently, but there were no new charges being brought. Isn't that correct? That's correct, Your Honor. And you should treat it differently because the Nursing Home Care Act compels it. The Nursing Home Care Act does not require the director to pass judgment on the factual allegations that the on-site surveyor wrote up. The Nursing Home Care Act requires the authority of the director to make the violations, make the determination of violations, assess the level of severity and the penalties. Didn't the original notice refer to Type A violations, being plural? Judge, it did say Type A violation with yes in parentheses, which is the boilerplate language of the IDPH notice format itself. But there's a number of evidence in the record that indicates it assessed a single Type A violation. The internal surveyor processing log and the legal action taking log both have it down as just one Type A violation. And also in the notice itself, when it's listed out as Type A violation, it's put together as one single Type A violation of those strings. And, Your Honor, I see that my time is up, so I will yield to Mr. Maher. Okay, thank you. Thank you. May it please the Court, my name is Daniel Maher. I'm one of the attorneys for Community. The issue I'm going to be speaking about today is the Section 3-305 of the Nursing Home Care Act that sets the amount of fines for Type A violations. Since we are interpreting a statute, it's a de novo review by this Court, and you're free to substitute your judgment for that of the Department of Public Health. The rules of statutory construction are pretty clear. When a court interprets a statute, it must give full effect to all provisions of the statute, and it must construe the statute so no word, clause, or sentence is rendered meaningless. The plain language of Section 3-305 in this case, including the clause, whichever is greater, which appears at the end of the section regarding the Type A violation, clearly shows that for a single Type A violation, which was issued in this case, the amount of the fine should be $5,000 or $10,000 depending on the harm alleged by the Department of Public Health. Section 3-305 sets out two methodologies the Department uses in issuing a fine. It can go with a daily fine based on the number of residents in the facility and the days of noncompliance alleged by the Department. They calculate that fine. The second methodology is to use a flat rate fine of $5,000 or $10,000 depending on the harm alleged by the Department. The clause, whichever is greater, that appears at the end of the section on Class A and modifies that whole clause or that whole part of that statute, clarifies how the Department picks between those two methodologies. So if the Department determines that the daily rate methodology comes to a figure larger than $5,000 or $10,000, again given the harm they allege, they use the daily rate fine and that's what the nursing home is fined, or the DD facility. If they do the calculation and find that the flat rate fine is greater than the daily fine that they allege, then they pick the flat rate fine. That's what gives, and the clause, whichever is greater, tells the Department that's how you choose between the two. Now the Department can choose whichever one they want, but that's how they decide between the daily rate fine and the flat rate fine. Once they decide to issue a flat rate fine, it's $5,000 or $10,000 depending on the harm that they allege in the case. In their brief, in the IDPH brief, they stress the language in the statute that talks about not less than $5,000 or not less than $10,000. That language is in there, but again, the clause, if you interpret it the way they want to do it, and say it's any flat rate fine that we think is appropriate given the conduct alleged, that renders the clause, whichever is greater, meaningless in the statute. There would be no reason for the legislature to have that language in the statute unless it qualifies how the Department is supposed to impose their fines. The other problem with the Department's interpretation in the not less than is they can say today's $20,000 fine is tomorrow's $50,000 fine, which is the next day's $100,000 fine, if we find the conduct is egregious enough. There's absolutely no limit on the Department in how they assess a flat rate fine unless you give some meaning to the clause, whichever is greater. And as set forth in our brief, we think that's unconstitutional in the sense that it delegates the power of the legislature to the IDPH, and it's an unfettered. What case supports that last argument? It's Figures v. Swank's. Holding unconstitutional the authority? Holding that the delegation to a state agency of unfettered power to impose a What's the situation in that case? Judges, I apologize. I don't have it at the tip of my tongue. That's my fault. I'd be happy to provide it later. The point being is that the legislature never gives a state agency unfettered power to impose fines in cases. We'd ask the court to look at the statute, interpret it our way, and find that the clause, flat rate fines for a single type A violation of $5,000 or $10,000. Thank you. Thank you. Ms. Hughes. Good morning, Your Honors. Good morning. For the record, my name is Jan Hughes, counsel. Your Honors, before I start, I just want to make clear that Mr. Maher's argument is relevant only if somehow the original notice of violation comes back into play. Because the amended notice of violation does nothing to go over the statutory limit for the fines. So his argument would only be relevant if you would somehow find that the amended violation is void and automatically the original one is revived. So if we disagree with the position of counsel, Mr. Lundy, that the initial or the change of the charge of violations The amended notice? The amended notice was The amended notice was valid. If we find that to be proper, then there's no problem with regard to the fines? It was absolutely proper, Your Honor. Go ahead. The Rosewood injunction was in place. And Rosewood, the circuit court in Rosewood, did not simply deal with the Rosewood parties, but it applied an injunction to any case that was then pending involving the department in this particular type of situation. So when the Rosewood circuit court decision was entered, the department had to do something. And what it did, we believe, is comply with that injunction. Not evade it, but comply with it. And the original notice of violation charged 12 type A violations and assessed one $20,000 fine for all of those. But it's clear from the original notice of violation that there were 12 type A violations, not more than 12. And why is that clear? It's clear, Your Honor, because there is nothing in that original notice of violation that says type A violation. Everything in it, and it's right here in front of me, says violation with an S in parentheses behind it. And again, I mean, there were 12 violations. There was not just one. There were 12. Why didn't the department bring that charge initially as it amended it later? I'm sorry. The department amended these charges. Why didn't they bring it that way in the first place? Because they felt that the facility had violated the statute in 12 distinct ways. And the department was perfectly happy with the original notice of violation that said to the facility, you violated the statute in 12 ways. We're imposing a $20,000 fine. So the original notice, there was nothing wrong with that notice until the Rosewood injunction was entered. Well, if the notice hadn't been amended, then Mr. Maher's argument would have to be addressed, would it not? That's correct. But now we're in a situation where if this court would find that the amended notice is void and the other one somehow is revived, we have a notice of nine violations that have never been litigated. And so I think it puts the case in kind of an awkward position, because the department has never found whether the department could prove, in fact, that those were violated or not. So getting back to the amended notice of violation. So your argument is that plaintiff, it was clear or should have been clear to plaintiff under the original notice that it was being charged with 12 Class A type violations. That's correct, Your Honor. And they are listed individually in the notice of violation. And those are 12 somewhat interrelated, but certainly 12 violations that the serious facts of this case support. Many of the nine that were omitted had to do with contacting law enforcement. We have one remaining, Section 352 of 75B3, that also says the department violated the statute by failing to contact law enforcement regarding sexual abuse. The other nine, most of them also dealt with the failure to contact law enforcement. So there's nothing in the original notice of violation that indicates this was only one violation. And, in fact, it's clear by listing all of these 12 that there were multiple violations. There was just only one fee imposed for all of those 12. But getting back to the amended notice, when the Rosewood injunction entered, the department was faced with the decision of how to comply with that. The deputy director had already indicated that a $20,000 fine was appropriate for this facility. Well, you could have complied with it just by reducing the amount of fine from $20,000 to $10,000. I don't know that the prosecutor felt that she had the authority to do that, because we already knew that the deputy director believed $20,000 was appropriate. By the prosecutor simply on her own putting that down to $10,000, I think would be redetermining a penalty. And in the reply brief of the plaintiff on page eight, the plaintiff concedes that the department cannot redetermine a penalty. And so I think the department was put in a situation of how can we best comply with this injunction. And I think that they came to a valid and appropriate compromise by omitting some of the somewhat redundant violations, going ahead with three of them, and then assessing penalties that would equal the $20,000 that the original deputy director thought was appropriate. And so I think, frankly, that the amended notice not only complied with the injunction, but it was also consistent with the deputy director's original imposition of the fine. And in that way, I think that the prosecutor felt, and the ALJ felt, and the deputy director at the end of the case obviously believed that that was a proper way to both comply with the injunction and to address these serious violations of the statute. I just want to also clarify, not that I don't think it's terribly relevant, but just so the court is operating under the proper section of the Nursing Home Code, or the Nursing Home Act, that this was, the department conducts surveys of facilities and will find violations. This was a complaint that came to the department. And to determine whether the statute was violated in that situation, we look to Section 3-702, which says that the department has, depending on what the complaint is, either seven days or 24 hours to investigate and 30 working days to determine the violation. So I just want to make sure that the court has the correct provision of the statute. And the initial notice of violations complied with that 30-day working rule. And I don't think when we're talking about the amended notice of violations, that we go back to determine whether that was somehow outside the 30-day working rule timeline. Of course it was. But the amended notice did not redetermine the violations. It did not add a violation. It omitted some that were somewhat similar to those that were left, and again came up with a $20,000 fine, which is what the original one assessed. So our position, obviously, is that the amended notice of violation was not only valid, but it was appropriate because it complied with the Rosewood injunction. What about the argument that the director had to do it? That the director didn't sign it? Well, our argument is that the director, when he issued his final decision, said that he read the record and considered all the arguments, and obviously if he had felt that that was an improper way to handle the case and comply with the injunction, he would have said something in his decision.  And the director had the opportunity at that point to reverse that decision, and he did not. So I think that in my brief I've used the word, you know, he essentially ratified the ALJ's decision to grant the motion to amend. The rules of the department talk about motions to pleadings. They talk about motions being brought at the earliest opportunity. And the Rosewood injunction was issued on February 13th of 2009. The motion to amend was filed on March 16th. So considering that the department had to decide how to best comply with the injunction and get its motion on file, we believe that those 31 or 2 odd days was certainly at the earliest opportunity. I think that's all I have. Thank you very much. And I would ask this court to affirm the circuit court's decision in this case. Thank you, counsel. Rebuttal, please. Thank you, Your Honors. I would like to take the opportunity to rebut part of the argument by the department that I think is incorrect, that all along Belafontaine was faced with 12 type A violations under that initial notice. Your Honors, at pages A70 and A71 of the appendix of our opening brief, we've got evidence in the record of the IDPH internal documentation of processing the allegations from the surveyor level up to the director. How is that relevant to the charges actually brought? Because, Judge, both of those documents clearly indicate that one A violation is indicated. And for that one A violation, they imposed a $20,000 fine. Well, this is their internal stuff. When they sent you a notice of charge, how many were included? One. I thought, what about her reference to the 12th? It is one type A violation of 12 sections and subsections of the code. There's a difference between a violation and a code section that makes up the violation. You can have one violation of a numerous amount of code sections. You can have one violation for each code section. That's, in effect, the IDPH redetermination here. If we don't agree with you that this is somehow a new charge, then does any of this matter? Judge, I think, are you asking if I don't prevail on the argument about the propriety of the amendment? That it's a redetermination. Then the issue about the limit on the fine, I think you're correct. I've got to win on the part one of our argument for you to get to part two. But, Your Honor, I think, again, going back to how many violations were really at issue here. Now, where is it clear in the appendix that there was only one A violation charge? Your Honor, at page A70, which is a document titled Illinois Department of Public Health, ICFDD, etc. Right, I've got that. Now, where is it clear on this? In the middle, there's lines for number of violation, ABWRARBRW, one violation, one A. And on the second page immediately following that, in the middle it says legal action taken. And above there, it's marked initial A and A's one is indicated there. Can you explain the opposing counsel's argument that it was clear there were 12 type A violations? There are 12 sections and subsections of the code listed under that one violation. 350.610A, 350.620A, 350.750A1B3. When you total up all those desperate subsections, you get to 12. But, Judge, if IDPH was really imposing 12 type A violations from the get-go, why would they ever need to do the amendment after the Rosewood injunction? Wouldn't their position be, we've got 12 type A violations, so that $20,000 is apportioned across all 12. They never would have come back in March, a week before the hearing, and said, we've got to fix this, let's take out 9 of those code sections and subsections, we'll knock it down to 3, and that way we can justify a $5,000, a $5,000, and a $10,000 fine to get up to 20 again. I think it's transparent that IDPH took this action because of the Rosewood injunction, but I think it's also equally transparent that they did this as a sidestep around the injunction, rather than to conform their actions to the court order. This is an agency that was told by the circuit court that it couldn't impose a fine more than $10,000, but it did it anyway. It did it by saying, we'll split 1 into 3, and then we don't have to worry about what any circuit court judge says or any injunction placed against us. We kind of played forth the arguments why that is technically improper under the Nursing Home Care Act, but Your Honor, I think looking at the big picture as well, that's not action that the courts should countenance or allow a government agency to take. Counsel, I'm looking at the violations that are alleged, and I recognize that conceptually this was one incident, but it seems to me by looking at the violations, there were numerous duties that arose on behalf of your client based on this one incident. For instance, prompt notification of the state, prompt notification of law enforcement. The laundry list goes down. So even though it was one incident, there were a whole bunch of different duties that were sprung into existence upon the incident occurring. Isn't that correct? It is. Your Honor, I see my time is up. May I please go ahead to your question? Judge, you're right. The survey and the incident that gave rise to this case involves a number of provisions of the code that a facility is supposed to comply with and a number of residents as well. But it still equates to one type A violation because that's what IDPH determined after the survey. IDPH is well within its authority after receiving a survey that alleges numerous code sections and different duties and different residents to initially say, for this case we think it's six type A violations and each get a separate fine, or 12 violations with apportioned fines for each one, or just one single violation containing a numerous number of code sections. I guess the point of my question is, had the state taken a more difficult view of this, they could have assessed $20,000 for six different violations? They would be. If they did that at the initial stage, the time period to initiate a determination of violation, they have the authority and discretion to impose a fine for each and every code section they allege. Yet they'd also have to prove by a preponderance of evidence each and every violation. Well, failure to call the state, failure to call the cops, you know, it's pretty easy. It is. And with that, Judge, there's also a determination whether the fine is proportionate and rational to the amount of culpability by the facility. So part of that action would be whether the failure to call the state would justify a $10,000 fine, given the totality of the circumstances and the totality of IDPH's enforcement mechanism. Thank you, Counsel. Thank you. Cases.